IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANNON V. J., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Case No. 25-cv-00054-SH |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | ) ) ) |
|     Defendant. | ) ) |

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shannon V. J. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.   Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Background and Procedural History

Plaintiff filed for Title II disabled widow benefits on August 31, 2022.[2] (R. 176.) In her application, Plaintiff alleged she has been unable to work since January 9, 2012, due to conditions including depression, dysthymia, bipolar disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder, fibromyalgia, and anxiety. (R. 177, 206.) Plaintiff was 59 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 32, 177.) Plaintiff has two years of college education and no past relevant work. (R. 45, 207.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 84–93, 96–103.) Plaintiff then requested and received a hearing before the ALJ. (R. 38–57, 104–07.) The ALJ denied benefits and found Plaintiff not disabled. (R. 18-32.) The Appeals Council denied review on December 17, 2024 (R. 1-7), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

---

[2] Title II provides that the widow of an individual who died fully insured is entitled to widow's insurance benefits if she "has attained age 50 but has not attained age 60 and is under a disability (as defined in [42 U.S.C. § 423(d)] which began before the end" of the time specified in the statute. 42 U.S.C. § 402(e)(1)(B)(ii). The only issue in this case is whether Plaintiff was under a disability as defined by § 423(d).

### III. The ALJ's Decision

In their decision, the ALJ noted the prior finding that Plaintiff met the non-disability requirements for disabled widow benefits. (R. 20.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (*Id.*)

At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, adjustment disorder with mixed anxiety and depressed mood, bipolar disorder, and PTSD. (R. 21.) The ALJ further found Plaintiff to have the non-severe impairments of spinal spondylosis, left-side cubital and carpal tunnel syndrome, irritable bowel syndrome, hyperlipidemia, hypothyroidism, and obesity. (R. 21–22.) The ALJ concluded that the combination of Plaintiff's physical impairments was non-severe. (R. 22.) Finally, the ALJ found the following not to be medically determinable impairments: osteoarthritis, inflammatory arthritis, and right-side carpal tunnel syndrome. (R. 23.)

At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of a listed impairment. (R. 24–25.) The ALJ then found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff is] able to understand, remember, and carry out simple instructions and make simple work related decisions in a routine work setting; able to perform tasks that do not require a specific production rate pace, like that found in assembly line work or work that requires an hourly production quota; and is [able to have] occasional interaction with supervisors, coworkers, and the public.

(R. 25.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 25–31.) At step four, the ALJ found Plaintiff had no past relevant work. (R. 31.) Based

4

on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform work that existed in significant numbers in the national economy, including laboratory equipment cleaner, janitor, and industrial cleaner sweeper. (R. 31–32.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 32.)

### IV. Issues

Plaintiff raises three errors on appeal: (1) the ALJ failed to properly consider and explain their rejection of limitations in certain medical opinions or findings (Dkt. No. 12 at 12–19); (2) the ALJ erred in finding certain limitations non-severe (*id*. at 19–27); and (3) the RFC failed to account for the ALJ's finding that Plaintiff had moderate limitations in adapting and managing herself (*id*. at 27).

### V. Analysis

#### A. Rejection of Limitations in Medical Opinions and Findings

Plaintiff argues the ALJ failed to properly consider and explain their rejection of limitations assessed by various medical opinions or findings, and, if the ALJ had done so, Plaintiff would have had a more physically restrictive RFC. (Dkt. No. 12 at 12.) The Court finds the ALJ adequately articulated their decision as to the persuasiveness of the various medical opinions and prior administrative medical findings, and the ALJ's decision is supported by substantial evidence.

##### 1. RFC Considerations

To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id*. The

5

Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id*. § 404.1520(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).

### 2.   Medical Opinions and Findings—Generally

A medical opinion is a statement from a medical source about what a claimant can still do despite their impairment(s) and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions. *Id*. § 404.1513(a)(2). Prior administrative medical findings are findings "about a medical issue made by . . . Federal and State agency medical . . . consultants at a prior level of review" in the current claim, including the RFC. *Id*. § 404.1513(a)(5).

When considering a medical opinion or prior administrative medical finding, an ALJ does not defer or give any specific evidentiary weight to the opinion or finding. *Id*. § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of the opinion or finding by considering certain factors. *Id*. § 404.1520c(a) & (c). These factors are (1) the supportability of the opinion or finding; (2) the consistency of the opinion or finding; (3) the medical source's relationship with the claimant; (4) the medical source's specialization;

and (5) any other factors that tend to support or contradict the opinion or finding. *Id.* § 404.1520c(c).

Of these five factors, the ALJ must always explain how he considered only two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is internal to the medical source—"[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency, meanwhile, has both an internal and external element. "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). Such "evidence from other sources" includes an analysis of whether there are "internal conflicts within the evidence from the same source." *Evaluating Med'l Opinions and Prior Admin. Med'l Findings–Claims Filed on or after Mar. 27, 2017*, Program Operations Manual System, DI 24503.025(E)(2).

As a part of this consideration, it is generally improper for an ALJ to "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). To the extent the ALJ is not rejecting the findings, however, he is under no obligation to discuss "every piece of evidence." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (citing *Clifton* in the context of medical opinion evidence). Instead, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he

7

rejects." *Clifton*, 79 F.3d at 1010. There is also no requirement "for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record" *Id.* (citation modified).

### 3. Dr. Keer

Plaintiff first argues that the ALJ failed properly to articulate their analysis of the prior administrative medical finding of Nadine Keer, D.O. (Dkt. No. 12 at 13–15.) At the initial stage, Dr. Keer found Plaintiff would be limited to light work[3] with occasional climbing of ladders, ropes, or scaffolds; occasional crawling; frequent climbing, balancing, kneeling, and crouching; and limited handling and fingering. (R. 65–66.) The ALJ found this medical finding not persuasive. (R. 30.[4]) On supportability, the ALJ found the finding partially supported by reference from the record. As for consistency, the ALJ found the finding was "not consistent with physical examinations showing full strength, normal range of motion, no swelling, intact sensation, and other normal findings[,] as well as strenuous activities." (*Id.* (citations omitted).) Plaintiff does not dispute that much of the evidence cited supports the ALJ's conclusions. For example, the cited pages of the record show: (1) spinal rotation within normal limits, no tenderness to palpitation, full bilateral strength, sensation intact to light touch with some diminished sensation in the left upper extremity, normal strength with no instability, and range of motion within normal limits (Ex. 2F/12—13 (R. 314—15)); (2) no tenderness in the low

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[4] The ALJ's decision contains an identical discussion at R. 29.

8

back with excellent range of motion and good strength (Ex. 5F/417 (R. 753)); (3) no spinal tenderness, gait and station intact with some core balance issues, intact range of motion, no swelling, intact and full strength, intact sensation, and intact gait (Ex. 14F/10–11 (R. 1298–99 ); (4) Plaintiff's report that she tries to stay active, walks her dogs, and is active in her yard despite her back pain (Ex. 5F/414 (R. 751)); (5) Plaintiff's reports that she walks, reads, goes outside, and keeps up with three dogs and two cats, despite her reports of fatigue and low energy (Ex. 18F/27 (R. 1419)); and (6) Plaintiff's reports that she started projects on her house and asked for help from a neighbor (Ex. 19F/63 (R. 1505)).[5]  Plaintiff faults this consideration, because these same records contained some findings that were slightly negative. (Dkt. No. 12 at 14.) For example, Plaintiff faults the ALJ for ignoring the "core balance issues" mentioned in one of the cited records. (Dkt. No. 12 at 14.) However, the ALJ was well aware of this issue and specifically noted it elsewhere in the decision. (R. 22 (referencing this medical evidence as showing "no more than mild balance disturbance").) Plaintiff also faults the ALJ's interpretation of evidence the ALJ considered—such as the ALJ's interpretation of Plaintiff's activities as "strenuous." (Dkt. No. 12 at 14.) This does not rise to the forbidden "picking and choosing," and Plaintiff is merely asking this Court to find the ALJ should have weighed the evidence differently. The ALJ appropriately articulated their findings as to supportability and consistency, and those findings are supported by substantial evidence.

---

[5] The ALJ also cited to Ex 5F/331 (R. 667). This appears to be a typographical error. The first time the page is cited, the ALJ notes that it is a record of a physical examination from August 2022. (R. 23.) But the page cited is to a phone record from April 2021. (R. 667.) While this error prevents the undersigned from following all of the ALJ's reasoning, the ALJ provides several other record citations supporting their decision that constitute substantial evidence.

### 4. Dr. Munshi

Plaintiff next takes issue with the ALJ's consideration of the medical opinions of Plaintiff's psychiatrist, Elizabeth Munshi, M.D. (Dkt. No. 12 at 15–18.) In her first opinion, Dr. Munshi assessed Plaintiff's mental limitations and concluded that Plaintiff would be off task more than 30% of the workday, would be absent at least five days per month, would be unable to complete an eight-hour workday at least five days per month, and would 50% less efficient than an average worker. (R. 1068–69.) Dr. Munshi's second opinion found more marked and extreme limitations in Plaintiff's abilities to carry out various mental activities and reached similar conclusions regarding off-task time, absences, and efficiency. (R. 1287–88.) The ALJ found Dr. Munshi's first opinion to be partially persuasive and her second opinion to be less persuasive. (R. 30—31.[6])

Plaintiff appears to fault the ALJ's supportability analysis of Dr. Munshi, because it complained of her "lack of citations to records," when the ALJ also cites to few records. (Dkt. No. 12 at 15—16.) First, this statement is incorrect, as the ALJ cited to several records specifically in discussing Dr. Munshi's opinions and cited additional records throughout the decision. (*See, e.g.*, R. 30–31.) Second, there is no requirement that the ALJ cite more records than a medical provider when analyzing whether that medical provider adequately supported their opinions. Instead, the ALJ is to look at the relevance of the "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(1). The ALJ did just that, noting, as to the first opinion "[t]here are no explanations or support provided in the opinion to explain the limitations, such as time off task, absences, and

---

[6] Dr. Munshi's opinions are also discussed by the ALJ at R. 29.

inefficiency" and noting, as to the second opinion, that the limitations were not consistent with Dr. Munshi's own treatment notes. (R. 30.)

As for consistency, the ALJ found some of Dr. Munshi's mental limitations consistent with the record, but found others not consistent with other evidence referenced throughout the ALJ's decision. (R. 29–30.) Plaintiff does not engage with this analysis, and instead points to records Plaintiff feels <u>are</u> consistent with portions of Dr. Munchi's opinions—much of which consists of Plaintiff's subjective symptoms of depression, fatigue, or anxiety. (Dkt. No. 12 at 16–17.) But, the ALJ specifically considered evidence of these symptoms as reported by Plaintiff or observed by her caregivers. (R. 26–27.) The ALJ accounted for these symptoms by limiting Plaintiff's RFC to simple instructions and simple decisions in a routine work setting, no tasks requiring a specific production rate, and no more than occasional interaction with supervisors, coworkers, and the public. (R. 27.) Plaintiff has not shown the ALJ ignoring the evidence; she simply disagrees with the ALJ's analysis of that evidence.

### 5.     Dr. Win

Finally, Plaintiff challenges the ALJ's assessment of the opinions of Thisa Win, M.D. (Dkt. No. 12 at 18–19.) In her first opinion, Dr. Win opined that Plaintiff could continuously sit or stand for a maximum of 15 minutes; could sit or stand for no more than two hours in a workday; could lift up to five pounds continuously but could rarely lift anything heavier; could rarely stoop, squat, crawl, climb, push or pull controls, or feel with her hands or fingers; could occasionally reach, handle, and manipulate; would be totally restricted from unprotected heights or exposure to dust, fumes, gases, temperature changes, or humidity changes; and would be moderately restricted from being around machinery or occupational driving. (R. 1070–71.) Dr. Win's second opinion was even

11

more restrictive, finding Plaintiff could rarely lift even five pounds; was even more limited in reaching, handling, and manipulation; and was now totally restricted in being around moving machinery and occupational driving. (R. 1284–85.) The ALJ found Dr. Win's opinions "not consistent with the record showing fairly normal physical examinations and very minimal treatment." (R. 31.[7]) Plaintiff does not discuss supportability and only attacks the ALJ's consistency analysis. (Dkt. No. 12 at 18.) Plaintiff faults the consistency analysis for not including any record citations (*id*.), but the ALJ's decision contains multiple discussions of the evidence of physical limitations that was considered throughout. (*See* R. 21–23, 29–30 (discussing physical examinations with normal results); R. 21 (discussing minimal treatment).) Again, while a more comprehensive explanation by the ALJ might make the Court's task easier, where "we can follow the adjudicator's reasoning in conducting our review," no reversal is required. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

Next, Plaintiff asserts the ALJ should have speculated that Dr. Win had access to other providers' treatment notes regarding various physical issues. (Dkt. No. 12 at 18–19.) Plaintiff does not explain why this makes the ALJ's consistency analysis inadequate. To the extent Plaintiff is arguing the ALJ engaged in improper picking and choosing, this argument fails. Plaintiff does not point to specific <u>uncontroverted</u> evidence the ALJ ignored or <u>significantly</u> probative evidence the ALJ rejected without any explanation. *See Clifton*, 79 F.3d at 1010.

---

[7] The ALJ also discusses Dr. Win's opinions at R. 23.

### B. Failure to Find Certain Impairments "Severe"

Plaintiff asserts the ALJ erred in failing to "find Plaintiff's obesity, chronic pain, and spondylosis of the whole spine to be severe, leading to an RFC not supported by substantial evidence." (Dkt. No. 12 at 19; *see also id.* at 23–27.) This argument is easily disposed of, where—as here—the ALJ found <u>other</u> impairments to be severe. *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008).

> Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

*Id.* (citation modified); *see also* 20 C.F.R. § 404.1523(c). In this case, the ALJ specifically noted that they "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (R. 22.) Plaintiff does not mention this statement, much less argue it is untrue. As the above discussion indicates, the ALJ, for example, considered medical opinions relating to Plaintiff's alleged (non-severe) physical impairments in determining the RFC. Plaintiff has failed to show any error by the ALJ.

### C. Failure to Incorporate Moderate "Paragraph B" Limitations in the RFC

Plaintiff's last argument focuses on the ALJ's failure to incorporate their finding of a moderate limitation in "adapting and managing" into the RFC. (Dkt. No. 12 at 19, 21.)

At steps two and three, the regulations prescribe a "special technique" to determine the severity or non-severity of mental impairments. *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). This technique includes rating degrees of limitation in certain areas. *See* 20 C.F.R. § 404.1520a. At step three, these degrees of limitation are then used in the so-

13

called "paragraph B" analysis. *See generally* Listing 12.00(A)(2)(b), 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff does not appear to take issue with the ALJ's finding, in this step-three analysis, that Plaintiff had only "moderate" limitations in the ability to "adapt or manage oneself."[8] (R. 25.) Instead, Plaintiff argues the "ALJ erred in failing to include mental limitations in the RFC in alignment with" the moderate finding. (Dkt. No. 12 at 19.)

But "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment . . . ." SSR 96-8p, 1996 WL 374184, at *4. The focus of the RFC should be on work-related mental activities, which include "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Wells*, 727 F.3d at 1069 (quoting SSR-96-8p, 1996 WL 374184, at *6). Here, the ALJ did not stop after analyzing the paragraph B criteria at step three. Instead, the ALJ went on to do the more detailed RFC analysis, discussing Plaintiff's symptoms, medical evidence, and medical opinions in detail, and then determining that certain mental limitations in the RFC were appropriate. (R. 25–31.) The ALJ then limited Plaintiff to simple instructions and simple work-related decisions, in a slower-paced environment, with only occasional interaction with supervisors and others, and only within a routine work setting. (R. 25, 27.) The ALJ provided the narrative discussion

---

[8] "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing [one's] psychologically based symptoms; distinguishing between acceptable and unacceptable goals; making plans for [oneself] independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." Listing 12.00(E)(4).

required at the RFC determination stage and was not required to specifically tie that to the very different discussion of the paragraph B criteria. In any event, Plaintiff has pointed to nothing in the ALJ's paragraph B findings—other than the mere label of "moderate"—that the ALJ failed to account for in the RFC. A moderate limitation in the paragraph B criteria does not <u>necessarily</u> translate to a work-related functional limitation in the RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (discussing the paragraph B criteria for concentration, persistence, and pace). The ALJ did not err in accounting for Plaintiff's mental limitations in the RFC.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is AFFIRMED.

**SO ORDERED** this 27th day of February, 2026.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT